UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BERNARD ALDERSON, MICHAEL FITZGERALD, MAUREEN ESTES, CARL MANCHESTER, GAIL HAMM, SHARON O'CONNOR, NANCY VIVEIROS, AMANDA CARVALHO, MARTIN REGO, DEBORAH MORAN, SCOTT MAURETTI, BRETT O'CONNOR, ROBERT STASIOWSKI, KATHERINE ANNE MEDEIROS, CHRIS CARPENTER, LORI CORAY, KERRI DOYLE, and GEORGE FLANAGAN, <br><br>                                  Plaintiffs, <br><br>        v. <br><br> LISA P. JACKSON, as she is the Administrator of the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LAURIE BURT, as she is the Commissioner of the MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION, the COMMONWEALTH OF MASSACHUSETTS, WAL-MART STORES, INC., and CARLYLE SWANSEA PARTNERS, LLC. <br><br>                                  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 1:10-cv-10793<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

1.      In this action, eighteen residents of the Town of Swansea, Massachusetts

("Swansea") are challenging the adequacy of the actions of federal and state environmental

agencies in protecting the Cole River and its associated wetland system in Swansea,

Massachusetts from pollution generated by the proposed expansion of the Swansea Mall.

Specifically, the Commonwealth of Massachusetts has failed to adopt and enforce meaningful

water quality-based restrictions on the discharge of stormwater into the navigable waters of the

1

United States, illustrated by Department of Environmental Protection's Superseding

Determination of Applicability finally issued on April 9, 2010 concerning the Mall Expansion

Project (the "SDA"), contrary to its obligations under the federal Clean Water Act ("CWA"). In

addition to its federal CWA claims, the plaintiffs challenge the correctness of the SDA itself

under the state Administrative Procedures Act, G.L. c. 30A, §14, and seek to restrain damage to

the environment in violation of the state Wetland Protection Act pursuant to G.L. c. 214, §7A.

## Parties

2.      The following residents of the Town of Swansea, Massachusetts are the plaintiffs

in this action:

| | | |
|---|---|---|
| 1. | Bernard Alderson | 419 Maple Avenue |
| 2. | Michael Fitzgerald | 427 Maple Avenue |
| 3. | Maureen Estes | 23 Cliff Avenue |
| 4. | Carl Manchester | 146 Smoke Rise Circle |
| 5. | Gail Hamm | 55 Walnut Street |
| 6. | Sharon O'Connor | 48 Shaylee Place |
| 7. | Nancy Viveiros | 578 Stevens Road |
| 8. | Amanda Carvalho | 25 Inverness Road |
| 9. | Martin Rego | 42 Picard Ct. |
| 10. | Deborah Moran | 74 Hortonville Road |
| 11. | Scott Mauretti | 262 Swansom Road |
| 12. | Brett O'Connor | 48 Shaylee Place |
| 13. | Robert Stasiowski | 40 Oakland Avenue |
| 14. | Katharine Anne Medeiros | 1204 Bark Street |
| 15 | Chris Carpenter | 229 Mount Fair Circle |
| 16. | Lori Coray | 96 Reservoir Avenue |
| 17. | Kerri Doyle | 22 Missile Loop |
| 18. | George Flanagan | 23 Cliff Avenue |

3.      The plaintiffs constitute more than ten citizens of the Commonwealth of

Massachusetts with qualified standing to pursue a claim under G.L. c. 214, §7A.

2

4.      The defendant Lisa P. Jackson is the Administrator of the United States Environmental Protection Agency ("EPA"), with a principal place of business at Ariel Rios Building, 1200 Pennsylvania Avenue, N.W., Washington, DC 20460.

5.      The defendant Laurie Burt is the Commissioner of the Massachusetts Department of Environmental Protection ("DEP"), with a principal place of business at One Winter Street, Boston, MA 02108.

6.      The defendant Wal-Mart Stores, Inc. is an Arkansas corporation with a principal place of business at 702 S.W. 8th Street, Bentonville, AR 72716.

7.      The defendant Carlyle Swansea Partners, LLC is a Massachusetts limited liability company with a principal place of business at 262 Swansea Mall Drive, Swansea, MA 02777.

**Jurisdiction**

8.      Jurisdiction over the federal law claims presented in this Complaint is conferred on this Court by 28 U.S.C. §1331, governing federal question jurisdiction, 28 U.S.C. §1361 governing mandamus jurisdiction, and Section 505(a)(1) of the CWA(33 U.S.C. §1365).  The United States District Court has exclusive jurisdiction over claims brought under the federal Clean Water Act pursuant to 33 U.S.C. 1365(a).

9.      Jurisdiction over the state law claims presented in this Complaint is conferred on this Court by 28 U.S.C. §1367(a) governing supplementary jurisdiction.

**Procedural History**

10.      On July 1, 2009, a group of 52 residents of the Town of Swansea, including all but one of the plaintiffs, filed a Request for Determination of Applicability under the state Wetlands Protection Act ("WPA") and the Swansea Wetland Bylaw (the "Bylaw"), seeking to

3

compel the defendant Carlyle Swansea Partners, LLC ("Carlyle") to file a Notice of Intent for its proposed expansion of the existing Swansea Mall retail complex.

11.     The Mall currently features a single, 596,493 square-foot building and associated driveways and parking areas on approximately 86 acres of land off Route 118 (Swansea Mall Drive) in Swansea. The construction of the Swansea Mall in the mid-1970's resulted in the filling of wetlands and the diversion of a stream or river that formerly crossed the Mall Site.

12.     The expansion plans include the razing of an existing Wal-Mart store, construction of a new 160,000 square-foot Wal-Mart "Supercenter" in a different location, and the expansion of existing parking facilities (collectively, the "Mall Expansion Project" or the "Project").

13.     The Project was approved by the Swansea Planning Board under the Town's administrative site plan review bylaw on June 1, 2009. A zoning variance was granted by the Swansea Zoning Board of Appeals for the Project in October, 2007.[1]

14.     The Swansea Conservation Commission issued a negative Determination of Applicability on July 13, 2009, finding that the Project did not trigger jurisdiction under the WPA or the Bylaw.

15.     The Swansea petitioners appealed that decision to the state DEP on August 6, 2009, requesting a "superseding determination of applicability."

16.     On October 20, 2009, DEP's Southeast Regional Office issued a Superseding Determination of Applicability, affirming the Commission's Determination.

---

1 The variance was subsequently appealed by abutters to the Mall. By 2009, however, Carlyle had reconfigured the layout of the Mall Expansion Project to obviate the need for the variance.

17.     On November 20, 2009, the petitioners exercised their right to an adjudicatory hearing at DEP. Wal-Mart, which had not previously participated in the environmental review, intervened as an interested party.

18.     In December 2009, the parties filed cross-motions for summary decision, and on April 9, 2010, DEP issued a Final Decision, affirming the Superseding Determination of Applicability (OADR Docket No. WET-2009-056). A copy of the Final Decision is attached as Exhibit A.

### Facts

19.     There is an existing subsurface drainage system on the Mall Site, which collects and diverts most of the stormwater runoff into two wetland systems – one in the rear (west) of the Site, and the other in the front (east) of the Site parallel to Route 118.

20.     The runoff that enters the western wetland system eventually reaches the eastern wetland system through a subsurface network of drain pipes.

21.     The runoff that enters the eastern wetlands is discharged directly into those wetlands via two outlet pipes. The runoff is then channeled through two culverts underneath Route 118, flowing easterly into another wetland and eventually into the Cole River.

22.     Cole River flows into Mount Hope Bay, and the Atlantic Ocean.

23.     Most of the runoff generated on the Mall Site is untreated before it enters the wetlands.

24.     The Project will require an expansion of parking areas, driveways, and buildings, and as such will create new impervious surfaces on the Mall Site.

25.     Stormwater falling on these new impervious areas will be drained directly to the linear Bordering Vegetated Wetland (BVW) system in the front (east) of the mall site (through

the subsurface network of pipes described above), and ultimately into the wetland system located

on the east side of Route 118.

## COUNT I
### (Clean Water Act)

26.     The plaintiffs reallege paragraphs 1-25.

27.     Congress passed the Clean Water Act to "restore and maintain the chemical,

physical and biological integrity of the Nation's waters." 33 U.S.C. §1251(a).

28.     About 40% of our nation's waters are "impaired" by pollution.  Untreated

stormwater runoff is the single greatest contributor to the degradation of the quality of our

nation's rivers and streams.

29.     The Cole River in Swansea is among those rivers that are classified as "impaired"

under the CWA, meaning that existing controls on point and non-point sources of pollution are

not stringent enough to meet and maintain applicable water quality standards.

30.     Under Section 303(d) of the CWA, states are required to develop and maintain a

list of impaired waters, and develop strategies for remediating those waters to achieve conformity

with water quality standards.  Specifically, states are required to determine the "total daily

maximum load" ("TMDL") of the impaired waters for certain pollutants, and then allocate the

allowable load to point and non-point sources.

31.     The CWA also requires states to maintain an "antidegradation policy" to ensure

that water quality standards are sufficient to maintain existing beneficial uses of navigable

waters, such as swimming and fishing, and preventing their further degradation.

32.     The Commonwealth has had decades to comply with the CWA's requirements to develop TMDLs for the state's impaired waters, and to date no TMDL or implementation plan has been adopted for the impaired segments of the Cole River.

33.     DEP has developed general implementation plans for enforcing TMDLs and improving the quality of the state's impaired waters. These plans rely heavily on an existing state regulatory framework, specifically the permitting regimes under the WPA and the state Clean Water Act.

34.     In October, 2009, DEP adopted "Implementation Procedures" for its antidegradation policy. By its own terms, the Procedures only apply to "new and increased point source discharges to surface waters of the Commonwealth requiring a permit under [the state Clean Water Act regulations]."

35.     The Procedures do not apply to existing discharges into the state's waters, or to new discharges that do not require a state Clean Water Act permit, such as the Mall Expansion Project.

36.     Like the state's TMDL policy, the state's antidegradation policy also relies on existing regulatory controls, such as the state Clean Water Act and the WPA.

37.     The WPA and the state River's Act contain strict controls on the discharge of runoff into wetlands, and are enforced through pre-construction review and permitting of new land use development projects.

38.     Pre-construction review and permitting of land use development projects under the WPA is only required when the development activity is within 100 feet of a protected natural resource area.

7

39.     Notwithstanding that the Mall Expansion Project will undeniably increase the volume of runoff into the existing subsurface network of drains that outlet directly into the wetlands that are hydraulically connected to the Cole River, DEP determined that it had no jurisdiction to require pre-construction review and permitting of the Project.

40.     Absent pre-construction review and permitting under the WPA, Carlyle and Wal-Mart will be free to discharge additional volumes of untreated stormwater runoff from the Mall Site into the wetland, which will exacerbate the existing impairment of the Cole River.

41.     As illustrated by DEP's SDA, the state's antidegradation policy has failed to protect the Cole River from an existing and future point source of pollution, and therefore does not satisfy the plain language or intent of the CWA's "antidegradation" provisions.

42.     The EPA has a mandatory obligation to revoke its approval of the Commonwealth's antidegradation policy, and order the Commonwealth to adopt a policy and implementation procedures that effectively restore and maintain the quality of the state's rivers and streams.

43.     DEP's failure to adopt a TMDL for the Cole River constitutes a constructive submission of no TMDL, requiring the EPA to affirmatively impose a TMDL on the Cole River.

### COUNT II
### (G.L. c. 30A, §14)

44.     The plaintiffs reallege paragraphs 1-43.

45.     Pursuant to 310 CMR 10.02(2)(a), an activity is subject to WPA jurisdiction, and therefore subject to the stormwater management standards, if it is proposed or undertaken within an "Area Subject to Protection" under the WPA, or within 100 feet of certain Areas Subject to Protection such as Bordering Vegetated Wetlands, and which will "remove, fill, dredge, or alter"

that wetland area. Such activities require the filing of a Notice of Intent (NOI) under the WPA, the purpose of which is to provide pre-construction review of the activity to ensure conformity with all of the wetland protection standards under the WPA.

46.     The definition of "alter" under the WPA regulations means "to change the condition of any Area Subject to Protection Under M.G.L. c. 131, §40" and specifically includes:

    a.   the changing of pre-existing drainage characteristics, flushing characteristics, salinity distribution, sedimentation patterns, flow patterns and flood retention areas;

    b.   the lowering of the water level or water table;

    c.   the destruction of vegetation;

    d.   the changing of water temperature, biochemical oxygen demand (BOD), and other physical, biological or chemical characteristics of the receiving water.

47.     The additional volume of runoff generated by the Project will enter the existing subsurface network of drains at locations greater than 100 feet from an Area Subject to Protection.

48.     The fact that the entrance points for the additional runoff are located more than 100 feet from a wetland is irrelevant where, as here, the runoff is undeniably being channeled directly into a wetland through a pipe. The pipe is considered part of the Project, and since the pipe is discharging directly into an Area Subject to Protection, the Project is within an Area Subject to Regulation pursuant to 310 CMR 10.02(2).

49.     As a consequence of DEP's SDA, Carlyle and Wal-Mart are under no obligation to design and install stormwater management utilities that comply with the WPA's strict stormwater standards. The introduction of addition untreated runoff into the Cole River wetlands

9

system will exacerbate the degradation of the Cole River, which is already on the Commonwealth's list of impaired rivers under Section 303d of the CWA.

50.    DEP's determination of its own jurisdiction under the WPA was erroneous.

## COUNT III
### (G.L. c. 214, §7A)

51.    The plaintiffs reallege paragraphs 1-50.

52.    The plaintiffs tendered the statutory required notice of intent to sue on April 16, 2010.

53.    In the absence of an enforceable Order of Conditions under the WPA requiring conformity with DEP's stormwater standards, damage to the environment is about to occur.

54.    In the absence of a legitimate, effective and enforceable TMDL and antidegradation policy under the Clean Water Act, damage to the environment is about to occur.

WHEREFORE, the plaintiffs respectfully request that this Court:

1.    Declare the Commonwealth's antidegradation policy nonconforming to the federal Clean Water Act, and order EPA to revoke its approval of said policy and order the Commonwealth to adopt a conforming policy;

2.    Declare the Commonwealth to be in noncompliance with the Clean Water Act's requirement to adopt TMDL plans for impaired rivers, and order the EPA to initiate establishment of a TMDL for the Cole River;

3.    Annul DEP's Superseding Determination of Applicability, and declare that the WPA mandates the filing of a pre-construction Notice of Intent for the Mall Expansion Project;

4.    Award the plaintiffs its costs of litigation, including reasonable attorneys fees and

expert witness fees, as provided under 33 U.S.C. 1365(d); and

5.      Grant such other relief as deemed just and equitable.


                                        By their attorneys,


                                        _____
                                        Daniel C. Hill (BBO #644885)
                                        Peter J. Cura (BBO #564195)
                                        LAW OFFICES OF DANIEL C. HILL
                                        31 5th Street
                                        Charlestown, MA 02129
                                        P: 617-242-0004
                                        F: 617-307-9010
                                        dhill@danhilllaw.com

**EXHIBIT A**
**DEP's Final Decision affirming its Superseding Determination of Applicability**

COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENERGY & ENVIRONMENTAL AFFAIRS
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**

ONE WINTER STREET, BOSTON, MA 02108  617-292-5500

April 9, 2010

In the Matter of
Swansea Residents Group

Docket No. WET-2009-056
File No. Determination of
               Applicability
Swansea

## **FINAL DECISION**

I adopt the Recommended Final Decision of the Presiding Officer. The parties to this

proceeding are notified of their right to file a motion for reconsideration of this Decision,

pursuant to 310 CMR 1.01(14)(e). The motion must be filed with the Case Administrator and

served on all parties within seven business days of the postmark date of this Decision. A person

who has the right to seek judicial review may appeal this Decision to the Superior Court pursuant

to M.G.L. c. 30A, §14(1). The complaint must be filed in the Court within thirty days of receipt

of this Decision.

Laurie Burt
Commissioner

This information is available in alternate format. Call Donald M. Gomes, ADA Coordinator at 617-556-1057. TDD Service - 1-800-298-2207.

MassDEP on the World Wide Web:  http://www.mass.gov/dep
♻ Printed on Recycled Paper

# Service List

In The Matter Of:                    Swansea Resident Group

Docket No.    WET-2009-056              File No. SDA
                                       Swansea

| Representative | Party |
|---|---|
| Thomas P. Killoran, Esq.<br>Killoran & Killoran<br>350 North Main Street<br>Fall River, MA 02720<br>tkilloran@killoranlaw.com | APPLICANT<br>Carlysle Swansea Partners LLC |
| Daniel C. Hill, Esq.<br>Law Office of Daniel C. Hill<br>31 Fifth Street<br>Charlestown, MA 02129<br>dhill@danhilllaw.com | PETITIONER<br>Swansea Residents Group |
| Bob Fitzpatrick, Esq.<br>David Gold, Esq<br>Wilmer HalePickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>Robert.fitzpatrick@wilmerhale.com<br>David.gold@wilmerhale.com | INTERVENOR<br>Walmart |
| Swansea Conservation Commission<br>68 Stevens Road<br>Swansea, MA 02777<br>swanseaconcom@aol.com; | CONCOM<br>Swansea Conservation Commission |
| Rebecca Cutting, Esq.<br>MassDEP/Office of General Counsel<br>One Winter Street<br>Boston, MA 02108<br>Rebecca.cutting@state.ma.us | DEPARTMENT |
| Richard Keller, Wetlands Analyst<br>MassDEP/Southeast Regional Office<br>Bureau of Resource Protection<br>20 Riverside Drive<br>Lakeville, MA 02347;<br>Richard.keller@state.ma.us | DEPARTMENT |

Date: April 9, 2010

COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENERGY AND ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
ONE WINTER STREET, BOSTON, MA 02108 617-292-5500

**March 10, 2010**

| | |
|---|---|
| In the Matter of | OADR Docket No. WET-2009-056 |
| | Determination of Applicability |
| Swansea Residents Group | |
| | Swansea |

## RECOMMENDED FINAL DECISION

This appeal involves a Request for Determination of Applicability filed by a ten

residents group (the "Requestors") on property associated with the Swansea Mall and

work involving the replacement of a Wal-Mart Store ("Wal-Mart") with a new Wal-Mart

at a different location within an existing paved area of the Mall, additional parking, and

changes to the stormwater management system. While Carlyle Swansea Partners is a

party as the owner of the Swansea Mall, Wal-Mart was granted status as a party because

as a tenant it is substantially and specifically affected by the proceeding. 310 CMR

10.05(7)(j)5. The Swansea Conservation Commission issued a negative Determination of

Applicability, finding that area described is not subject to the Wetlands Protection Act

and the proposed work is not within an area subject to protection, so that the work does

not require a Notice of Intent ("NOI") unless and until the work alters a resource area.[1]

---

[1] The Swansea Conservation Commission provided additional findings, including the Swansea Planning Board's determination that the project complies with the Department's Stormwater Management Standards identified in 310 CMR 10.00, that all activities are located upland of resource areas and the buffer zone, and "notwithstanding an increase in the volume of stormwater that flows to the Wetlands as a result of the increase in impervious materials as shown on the site plan approved by the Planning Board, neither the activities of the Project nor any stormwater discharge resulting from the project, will alter an area subject to

After the Requestors sought further review, the Department issued a negative Superseding Determination, also finding that the proposed work would not take place in a resource area or the buffer zone, so that no NOI would be required unless and until an alteration of a resource area actually occurred. *See* 310 CMR 10.02(2)(d).[2]

The Requestors filed a Notice of Claim for adjudicatory hearing. In the appeal, the Requestors claimed that the discharge of stormwater from the redevelopment was an activity that would alter resource areas and was therefore subject to jurisdiction and required the filing of a Notice of Intent. The Requestors also claimed that because the stormwater from the Swansea Mall reaches the Cole River, an impaired water subject to a Total Maximum Daily Load ("TMDL") analysis under the federal Clean Water Act, jurisdiction under the Wetlands Protection Act is necessary to reduce pollution contributed by the project at Swansea Mall. *See* 33 U.S.C. 1251, Section 303(d). Carlyle Swansea Partners and Wal-Mart disputes these claims, as does the Department.

The Parties agreed at the Pre-Screening Conference that this appeal could be resolved on motions for summary decision, and the Parties filed motions and oppositions. I conclude that the discharge from the existing stormwater system of additional stormwater from outside jurisdictional areas at this site to the buffer zone or resource areas is not subject to jurisdiction of the Wetlands Protection Act unless and until an alteration has occurred. *See* 310 CMR 10.02(2)(d). Additionally, I conclude that Department is not obligated to exercise jurisdiction over the proposed work under the

---

protection under the Act or the Bylaw, provided that such activities comply with the Stormwater Management Plan."

[2]"Unless and until" is also called "after the fact" jurisdiction.

Wetlands Protection Act and regulations in order to fulfill its obligations under the

federal Clean Water Act.

## ISSUES FOR RESOLUTION IN THE APPEAL

1)     Whether the discharge from the existing stormwater system of additional stormwater from outside jurisdictional areas at this site to the buffer zone or resource areas at this site is within jurisdiction of the Wetlands Protection Act and regulations, so that it requires the filing of a Notice of Intent?

2)     Must the Department exercise jurisdiction over the proposed work under the Wetlands Protection Act and regulations in order to fulfill its obligations under the federal Clean Water Act?

## STANDARD OF REVIEW

310 CMR 1.01(11)(f) allows any party to an administrative appeal to make a

motion for summary decision.  Summary decision is appropriate where the party seeking

summary decision can "demonstrate that there is no genuine issue of material fact and

that the party is entitled to a final decision as a matter of law."  310 CMR 1.01(11)(f).  At

the Pre-Screening Conference, the Parties agreed that there are no disputed issues of

material fact in this matter and that the case may be resolved on summary decision.  A

ruling granting or denying summary decision must be made on "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any."  Id.  The Parties filed cross-motions for summary decision and

oppositions.

## APPLICABLE STATUTES AND REGULATIONS

The Wetlands Protection Act, M.G.L. c. 131 § 40, and its implementing

regulations, 310 CMR 10.00, establish jurisdiction, procedures, and standards for projects

affecting wetlands.  A Request for Determination of Applicability may be filed by "any

person" seeking a determination as to whether M.G.L. c. 131, § 40 applies to land subject

4

to protection or to work that may affect land subject to protection. 310 CMR
10.05(3)(a)1. A Determination of Applicability is a "finding by a conservation
commission or the Department as to whether a site or the work proposed thereon is
subject to the jurisdiction of M.G.L. c. 131, § 40." 310 CMR 10.04 Determination.
M.G.L. c. 131, § 40 applies to land or a portion thereof, if it is an Area Subject to
Protection, or resource area, as defined in 310 CMR 10.02(1). 310 CMR 10.05(3)(b)2.
M.G.L. c. 131, § 40 applies to the work, or a portion thereof, if it is an Activity Subject to
Regulation, as defined in 310 CMR 10.02(2). 310 CMR 10.05(3)(b)2.

Any activity proposed or undertaken within a resource area that will alter that area
is subject to jurisdiction and requires the filing of an NOI. 310 CMR 10.02(2)(a). Any
activity proposed or undertaken within the buffer zone, which within the judgment of the
issuing authority will alter a resource area, is subject to jurisdiction and requires the filing
of an NOI. 310 CMR 10.02(2)(b). Any activity proposed or undertaken outside a
resource area or the buffer zone is not subject to jurisdiction and does not require the
filing of an NOI unless and until that activity actually alters a resource area; if an issuing
authority determines that an activity outside jurisdiction actually has altered a resource
area, it may require the filing of an NOI or issue an Enforcement Order and shall impose
conditions necessary to protect the interests of the Act. 310 CMR 10.02(2)(d). A
"Commentary" explains that activities outside resource areas and the buffer zone are so
unlikely to alter a resource area "that preconstruction review is not required, and
therefore the issuing authority shall not regulate said activities unless and until they
actually result in the altering" of a resource area. 310 CMR 10.02.

The term "work," as used in 310 CMR 10.05(4)(a), is defined in 310 CMR 10.04 as meaning the same as "activity." "Activity" is defined in that section as

> "any form of draining, dumping, dredging, damming, discharging, excavating, filling or grading; the erection, reconstruction or expansion of any buildings or structures; the driving of pilings; the construction or improvement of roads and other ways; the changing of run-off characteristics; the intercepting or diverging of ground or surface water; the installation of drainage, sewage and water systems; the discharging of pollutants; the destruction of plant life; and any other changing of the physical characteristics of land." 310 CMR 10.04.

"Alter" means "to change the condition" of a resource area, and includes "changing pre-existing drainage characteristics" and changing the "physical, biological or chemical characteristics of the receiving water." 310 CMR 10.04 Alter.

If an activity is subject to regulation under 310 CMR 10.02(2) and an applicant files a Notice of Intent, only the portions of the project within resource areas or the buffer zone must be described, but the applicant must calculate "peak flow and estimated water quality characteristics of discharge from a point source (both closed and open channel) when the point of discharge falls within" a resource area or the buffer zone. 310 CMR 10.05(4)(d). The conservation commission or the Department must impose conditions only upon work that is undertaken within a resource area or the buffer zone. 310 CMR 10.05(5)(b). The conservation commission or the Department also must:

> impose conditions setting limits on the quantity and quality of discharge from a point source (both closed and open channel), when said limits are necessary to protect the interests identified in M.G.L. c. 131, § 40; provided, however, that the point of discharge falls within an Area Subject to Protection Under M.G.L. c. 131, § 40 or within the Buffer Zone, and further provided that said conditions are consistent with the limitations set forth in 310 CMR 10.03(4).

310 CMR 10.05(5)(b). Stormwater runoff from projects subject to regulation under M.G.L. c. 131, § 40 must comply with Stormwater Management Standards identified at 310 CMR 10.05(6)(k), as further described in the Massachusetts Stormwater Handbook.

## THE PARTIES' CROSS-MOTIONS FOR SUMMARY DECISION

The Requestors argue that the project is subject to jurisdiction because it will "alter" a resource area, the discharge is actually located within a resource area, and the discharge is an "activity" that requires the filing of a Notice of Intent. Essentially, the Requestors claim that a Notice of Intent must be filed for work undertaken on a stormwater management system outside resource areas and the buffer zone, where there is an existing discharge to a resource area or the buffer zone.[3] The Requestors also argue that the Department's regulations and guidance envision Wetlands Act jurisdiction, because otherwise a project such as proposed here that increases stormwater flow into existing pipes discharging to resource areas would evade regulatory oversight. The Requestors also argue that the Department must conform to the requirements of the federal Clean Water Act, including the antidegradation provisions and the impaired status of the Cole River as the receiving water, by asserting jurisdiction under the Wetlands Protection Act.

Wal-Mart and Carlyle Swansea Partners jointly argue that the project is not subject to preconstruction review because there is no work within a resource area or the

---

[3] The Requestors supported their argument with the affidavits of Amy Ball and Scott Horsley. They state that the stormwater will be discharged to both bordering vegetated wetlands and a stream that formerly flowed through the site. For purposes of the cross-motions for summary decision, the various characterizations of the Parties as to the resource areas are not material to the resolution of the issue. As to existing conditions, the detention basin has not been maintained. Mr. Horsley stated his opinion that the introduction of additional stormwater from the 0.4 acres of new impervious surface would constitute an alteration requiring a Notice of Intent and compliance with the Stormwater Management Standards. The affidavits were silent as to any evidence that the stormwater discharged from the site under existing conditions was actually altering resource areas.

buffer zone and the project has not actually altered a resource area. Wal-Mart and Carlyle Swansea Partners cite to sections of the Massachusetts Stormwater Handbook entitled "Regulatory Requirements After the Fact," giving the examples of when a discharge pipe is located 105 feet from a resource area and when additional stormwater is routed through an existing outfall and results in an alteration of a resource area. Wal-Mart and Carlyle Swansea Partners concede that the project is potentially subject to "after the fact" regulation, if an alteration of a resource area actually occurs during or after construction. They note that the Swansea Planning Board required the implementation of a Stormwater Pollution Prevention Plan and that the new parking area be designed to remove 80% of total suspended solids, consistent with the Department's Standard 4. Finally, Wal-Mart and Carlyle Swansea Partners refute the Requestors claim related to the Clean Water Act by citing to Morrison v. Massachusetts Department of Environmental Protection, a recent Superior Court case affirming a Final Decision which concluded that the Department properly did not apply the antidegradation provisions arising under M.G.L. c. 21, §§ 26-53 through wetlands permits under M.G.L. c. 131, § 40. Morrison v. Massachusetts Department of Environmental Protection, C. A. No. MICV2008-02876-B (September 3, 2009); See Matter of Town of Hopkinton, Docket No. WET-2008-010, Recommended Final Decision (May 1, 2008), adopted by Final Decision (May 30, 2008).

The Department argues that the discharge of stormwater from outside resource areas and the buffer zone proposed here falls squarely within the provisions of 310 CMR 10.02(2)(d), where jurisdiction is not established "unless and until" an alteration has actually occurred. The location of the work, where the project proponent is changing the

physical characteristics of the land, is relevant to geographic jurisdiction, not the discharge from a distant pipe installed long ago. Thus, from the Department's perspective, the negative Determination constitutes not a lack of jurisdiction but potential jurisdiction that could still be triggered by an actual alteration of a resource area. The Department argues that it could assert jurisdiction over a developer adding untreated stormwater to an existing stormwater system discharging to a resource area, but after an alteration has occurred. The Department disagrees that the addition of stormwater volume from the increased parking area will necessarily constitute an alteration due to the requirements for peak flow attenuation, removal of 80% of total suspended solids, and other upgrades to the system. In response to the Requestors' assertion that Wetlands Act jurisdiction is warranted due to the absence of a Clean Water Act permit or other mechanism for TMDL implementation, the Department concedes that its Clean Water Act authority is a parallel effort to regulate stormwater discharges but states that it may not import Clean Water Act requirements into wetlands permitting.

## DISCUSSION

### 1. Jurisdiction over the discharge from the existing stormwater system of additional stormwater from outside jurisdictional areas to the buffer zone or resource areas.

The Department, in its Superseding Determination, made two findings. First, it determined that the area described in the project plans is not an area subject to protection as a resource area or the buffer zone.[4] Second, the Department determined that the work described is not within an area subject to protection and, therefore, the work does not

---

[4] The description of the area in the Request for Determination was more expansive than the Department's Superseding Determination, as it included the entirety of the Swansea Mall as circumscribed by the surrounding highways. The Department referenced the plans prepared for the Wal-Mart redevelopment project. The question of the locus of the Wal-Mart expansion project is not disputed by the Parties, and the Department properly specifies the area to which its Superseding Determination refers.

require the filing of an NOI unless and until the work alters a resource area. Each of these findings is correct, as to the discharge from the existing stormwater system of additional stormwater from outside jurisdictional areas to the buffer zone or resource areas. The findings are consistent with the Department's regulations and its Stormwater Management Handbook.

First, the governing provision in the regulations is 310 CMR 10.02(2)(d): any activity proposed or undertaken outside a resource area or the buffer zone is not subject to jurisdiction and does not require the filing of an NOI unless and until that activity actually alters a resource area. Wal-Mart and Carlyle Swansea Partners propose work outside resource areas and outside the buffer zone. This geographical limitation on jurisdiction has been embedded in the wetlands regulations since 1983, when the Department codified the 100 foot buffer zone and clarified that preconstruction review could not be asserted on work beyond the buffer zone absent a showing that the work has altered a resource area. *See* Commentary at 310 CMR 10.02(2) and Preface to the Wetlands Regulations, 1983 Regulatory Revisions at IV. A and V. B. Whether an alteration to a resource area may occur, or even is likely to occur, from work outside the buffer zone is not enough to require preconstruction review. Indeed, even work within the buffer zone requires an NOI only when, in the judgment of the issuing authority, the work will alter a resource area. 310 CMR 10.02(2)(b).

The Requestors' argument that the work, or "activity," is the discharge of the additional stormwater within a buffer zone or resource area cannot extend the reach of the geographic limitation set by the regulations. Any work or "activities" to install any portion of the stormwater conveyance system within the buffer zone or resource areas

10

was completed when the Swansea Mall was built in the 1970s. Work on the stormwater management system, outside the buffer zone but connected to the existing pipes that discharge to the buffer zone or resource areas, is subject to jurisdiction only after an alteration of a resource area has occurred. The relevant section of the Massachusetts Stormwater Handbook, "Regulatory Requirements After the Fact," provides the example of additional stormwater routed through an existing outfall and resulting in an alteration of a resource area. Massachusetts Stormwater Handbook, Vol. I, Chapter 2, p. 5 (2008); *see also* Stormwater Management Policy, Vol. One, p. 2-4 (1996) (after the fact jurisdiction may be asserted over "activities outside the buffer zone when additional stormwater is routed through an existing outfall pipe and results in an alteration of a wetland resource area.").[5]   To posit that the Wetlands Protection Act generally governs runoff entering pipes outside geographic jurisdiction that convey flows to point source discharges to water bodies is to encroach upon the authority of the Environmental Protection Agency and the Department, which regulate point source discharges under the authority of the federal and state Clean Water Acts. 33 U.S.C. 1251; M.G.L. c. 21 §§ 26-53.[6]

The Department correctly notes that there has been no determination that it will not assert jurisdiction. If an issuing authority determines that an activity outside jurisdiction actually has altered a resource area, it may require the filing of an NOI or

---

[5] The 1996 Policy explains that there are practical problems in asserting after the fact jurisdiction over stormwater discharges from existing pipes because it can be difficult to determine whether the cause of an alteration is the stormwater discharge and, if so, which contributor to the existing outfall is responsible. This difficulty is not present here, where Carlyle Swansea Partners owns the land and the discharges.

[6] While not all stormwater discharges are currently subject to individual or general permit programs, as is the case here, the Department has the authority to designate a discharge under 314 CMR 3.04(2)(b) in appropriate circumstances. The Requestors are correct that stormwater continues to contribute to impairment of water bodies. The history of stormwater permitting shows increasing regulation of stormwater discharges under the federal and state Clean Water Acts.

issue an Enforcement Order and shall impose conditions necessary to protect the interests

of the Act. 310 CMR 10.02(2)(d). The Department could have asserted jurisdiction over

the stormwater discharge from the Swansea Mall even absent the expansion plans, based

upon a finding that an alteration of wetlands resource areas was occurring that warranted

the exercise of its enforcement authority under 310 CMR 10.08.[7] I note, however, the

lack of any evidence in the record of adverse impacts to wetlands from the existing

stormwater discharge from the Swansea Mall and the view of the Swansea Conservation

Commission and the Department that the additional discharge from the expansion has

been designed to meet the Department's Stormwater Management Standards and the

existing discharge will be improved.

The potential for "after the fact" jurisdiction has long been understood to provide

an incentive to developers to design their projects to avoid impacts to resource areas that

might trigger jurisdiction. *See* Massachusetts Stormwater Handbook, Vol. I, Chapter 2,

p. 5 (2008) (example of developer locating discharge pipe 105 feet from resource areas,

with likelihood of unauthorized alteration); Stormwater Management Policy, Vol. One, p.

2-4 (1996) (example of stormwater discharge 105 feet from resource area and after the

fact jurisdiction); Preface to the Wetlands Regulations, 1983 Regulatory Revisions at

---

[7]The Requestors have identified administrative cases involving stormwater, but each addresses situations where work occurred in the buffer zone or resource area. In Matter of Edward E. Martinson, Docket No. 98-084, Final Decision (November 9, 1999), a gravel operation located outside the buffer zone was determined to be subject to jurisdiction when stormwater from the site actually altered a wetland resource area. Persons concerned about an existing situation should not file a Request for Determination of Applicability in an attempt to compel the Department to pursue enforcement. Enforcement discretion rests with the Department and generally can not be achieved through an appeal. *See* Matter of Carlton Leonard III, Docket No. 2002-127, Final Decision (January 26, 2004); Matter of Barbara M. Beaudry, Docket No. 2002-032, Final Decision (April 6, 2004). In Matter of Pelham Building Committee, Docket No. 98-054, Final Decision (August 14, 1998), the hearing officer cited to the 1996 Policy referring to ensuring that "stormwater generated from future development cannot simply be routed through existing drainage outfall pipes." *See* Stormwater Management Policy, Vol. One, p. 2-6 (1996). The Policy is emphasizing the importance of continuing conditions in an Order to limit future discharge volumes; the Swansea Mall was never subject to an Order of Conditions.

V.B. (incentive for developers to stay away from wetlands to avoid preconstruction review). However, additional stormwater from an existing pipe will not necessarily either constitute an alteration or increase the likelihood of an alteration that would warrant assertion of jurisdiction where, as in the Wal-Mart project, the upgrades to the stormwater management system would be expected to improve the quality of the discharge.[8] The premise of stormwater management is that a properly designed system, complying with the Department's Stormwater Management Standards, will protect the interests of the Wetlands Protection Act.

**2. Whether the Department must exercise jurisdiction over the proposed work under the Wetlands Protection Act to fulfill its obligations under the federal Clean Water Act.**

The Department's stormwater management program has been implemented through both the Wetlands Protection Act and Clean Water Act, but the Department has consistently refrained from merging its authorities, for several reasons. First, implementation of the Wetlands Protection Act is conducted jointly with conservation commissions, and commissions do not have authority under the state Clean Waters Act. M.G.L. c. 21 §§ 26-53. The Wetlands Regulations at 310 CMR 10.02(4) establish a presumption for NPDES/MA Surface Water Discharge Permits under the federal and state Clean Water Acts. Finally, the Department has full authority to implement each statute independently. Under the state Clean Water Act, the Department may regulate certain stormwater discharges and can designate additional discharges for oversight in certain circumstances. *See* 314 CMR 3.04(2)(b).

---

[8] If the developer here had not included stormwater management in the project design, the situation would have been similar to the developer locating an outfall pipe 105 feet from a resource area in that jurisdiction would likely be triggered. The Wal-Mart project is distinguishable because the developer has provided stormwater management.

As both the Department and the Requestors recognize, the Department issued

draft regulations in 2008 that would establish a new program for sites with large areas of

impervious surfaces, with more stringent requirements in TMDL areas. *See* Proposed

314 CMR 21.00 (2008 Public Comment Draft). These draft regulations have not been

promulgated. The Requestors are correct that the Department's recent Antidegradation

Policy applies to discharges requiring a surface water discharge permit pursuant to 314

CMR 3.00, and that this discharge is not currently covered by 314 CMR 3.00.

*Implementation Procedures for the Antidegradation Provisions of the Massachusetts*

*Surface Water Quality Standards*, 314 CMR 4.00 (October 21, 2009). A Draft TMDL for

the Narragansett and Mt. Hope Bay Watersheds, which includes the Cole River, was

pending when the motions were filed, and was released in January 2010 for public

comment.[9] Whether or not the Wal-Mart project falls within any of these actions taken

by the Department under its Clean Water Act authority does not change the Department's

jurisdiction under the Wetlands Regulations. In addition, any authority the Department

may have over the Wal-Mart project and the stormwater discharge at the Swansea Mall

under the Clean Water Act can not be adjudicated in this appeal arising under the

Wetlands Protection Act, as quite clearly the Department is not required by statute or

regulation to implement its Clean Water Act programs through its authority under the

Wetlands Protection Act. *See* Matter of Town of Hopkinton, Docket No. WET-2008-

010, Recommended Final Decision (May 1, 2008), adopted by Final Decision (May 30,

2008), Morrison v. Massachusetts Department of Environmental Protection, Sup. Ct.

C. A. No. MICV2008-02876-B (September 3, 2009).

---

[9] The Draft TMDL for the Narragansett and Mt. Hope Bay Watersheds is available at the Department's web site.

14

**CONCLUSION**

For the reasons stated, I recommend that the Department's Commissioner issue a Final Decision affirming the Department's Superseding Determination of Applicability that the area proposed for work to redevelop the Wal-Mart Store at Swansea Mall is not subject to jurisdiction and the proposed work is not subject to jurisdiction and does not require the filing of an NOI unless and until the work actually alters a resource area.

*Pamela D. Harvey*
Pamela D. Harvey
Presiding Officer

**NOTICE- RECOMMENDED FINAL DECISION**

This decision is a Recommended Final Decision of the Presiding Officer.  It has been transmitted to the Commissioner for her Final Decision in this matter.  This decision is therefore not a Final Decision subject to reconsideration under 310 CMR 1.01(14)(e), and may not be appealed to Superior Court pursuant to M.G.L. c. 30A.  The Commissioner's Final Decision is subject to rights of reconsideration and court appeal and will contain a notice to that effect.

Because this matter has now been transmitted to the Commissioner, no party shall file a motion to renew or reargue this Recommended Final Decision or any part of it, and no party shall communicate with the Commissioner's office regarding this decision unless the Commissioner, in her sole discretion, directs otherwise.

## Service List

In The Matter Of:        Swansea Resident Group

Docket No.    WET-2009-056          File No. SDA
                                     Swansea

Representative                        Party

Thomas P. Killoran, Esq.          APPLICANT
Killoran & Killoran                Carlysle Swansea Partners LLC
350 North Main Street
Fall River, MA 02720
tkilloran@killoranlaw.com

Daniel C. Hill, Esq.               PETITIONER
Law Office of Daniel C. Hill       Swansea Residents Group
31 Fifth Street
Charlestown, MA 02129
dhill@danhilllaw.com

Bob Fitzpatrick, Esq.             INTERVENOR
David Gold, Esq                  Walmart
Wilmer HalePickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Robert.fitzpatrick@wilmerhale.com
David.gold@wilmerhale.com

Swansea Conservation Commission    CONCOM
68 Stevens Road               Swansea Conservation Commission
Swansea, MA 02777
swanseaconcom@aol.com;        DEPARTMENT

Rebecca Cutting, Esq.
MassDEP/Office of General Counsel
One Winter Street
Boston, MA 02108
Rebecca.cutting@state.ma.us      DEPARTMENT

Richard Keller, Wetlands Analyst
MassDEP/Southeast Regional Office
Bureau of Resource Protection
20 Riverside Drive
Lakeville, MA 02347;
Richard.keller@state.ma.us

Date: March 10, 2010